No.: 05-981C
(Judge Sweeney)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

K-CON BUILDING SYSTEMS, INC.,

Plaintiff,

vs.

UNITED STATES,

Defendant.

---

**PLAINTIFF'S REPLY TO RESPONSE TO MOTION TO COMPEL**

---

William A. Scott
Pedersen & Scott, P.C.
775 St. Andrews Blvd.
Charleston, South Carolina 29407
(843) 556-5656
Fax (843) 556-5635
ATTORNEY FOR PLAINTIFF

November 29, 2007

# TABLE OF CONTENTS


BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. K-Con's First Request for Production . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. K-Con's Second Set of Requests for Production . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1. Categories a through e and q . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2. Categories j, k, n, o and p . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C. Government's Privilege Log and Documents Subpoenaed from the Government's Expert, John McGrath . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D. Cathy Broussard's (Contracting Officer) Journal . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

APPENDIX

Government Response to Interrogatory 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

Portions of Cathy Broussard's journal, Bates No. CG-STP-2552- 2556 . . . . . . . . . . . . . . . . . . A6

## TABLE OF AUTHORITIES

**Cases**

*AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 439 (2007) . . . . . . . . . . . . . . . . . . . . 1, 9, 10

*Antoine v. Atlas Turner,* Inc., 66 F.3d 105 (6th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of New York,* 171 F.R.D. 57(S.D.N.Y.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Beverage Mktg. Corp. v. Ogilvy & Mather Direct Response, Inc.,* 563 F.Supp. 1013, 1015 (S.D.N.Y.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*City of Torrance*, 163 F.R.D. 590 (C.D.Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Construction Industry Services Corp. v. Hanover Insurance*, 206 F.R.D. 43 (E.D.N.Y. 2001) . 11

*Elm Grove Coal Co. v. Director, Office for Workers Compensation Programs*, USDL, 480 F.3d 278, 299-303 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481 (Fed. Cl. 2000) . . . . . . . . 5, 9, 10, 11, 12

*Grace A. Detwiler Trust v. Offenbecher,* 124 F.R.D. 545 (S.D.N.Y.1989) . . . . . . . . . . . . . . 10, 11

*Messier v. Southbury Training Sch.*, No. 3:94-CV-1706, 1998WL422858, at 1-2 (D.Conn. June 29, 1988) (unpublished opinion) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Securities and Exchange Commission v. Reyes*, 2007 WL 963422 (N.D.Cal. 2007) . . . . . . 10, 11

**Rules**

RCFC 26(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

RCFC 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| K-CON BUILDING SYSTEMS, INC., Plaintiff, | ) | No.: 05-981 C (Judge Sweeney) |
| vs. | ) | |
| UNITED STATES OF AMERICA, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES COAST GUARD, Defendant. | ) | |

**PLAINTIFF'S REPLY TO RESPONSE TO MOTION TO COMPEL**

**BACKGROUND**

In the Government's Response, the Government essentially claims that it can "pick and choose" which documents relating to the contract it can withhold based on its determination of relevance or privilege. The Government ignores that "relevancy for the purposes of Rule 26 is broadly construed" *AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 439 (2007), and K-Con is entitled to discover all relevant information including "information that is reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1) RCFC. The requested documents must be produced because they are relevant or may lead to the discovery of relevant information, and are not protected by any privilege.

This case involves a negotiated procurement (RFP) for a design/build contract for a metal building in St. Petersburg, Florida. It was the first of three similar contracts awarded to K-Con by the Coast Guard under a GSA contract. During negotiations the Government requested revised proposals as a result of funding limitations. Because of the funding limitations, the Government could not complete all of the work it originally wanted on the building, and had to defer some work to later contracts. K-Con understood this would be a typical design/build contract similar to other

contracts awarded under its contract with the GSA. However, while the contract was a design/build contract, the Government dictated the design and the means and methods of construction.

The contract was awarded on September 5, 2003 for $534,930.00 with an initial completion date of July 26, 2004. There were six modifications to the contract increasing the contract amount to $539,430.00 and extending the completion date to September 2, 2004. The Government accepted the building as substantially complete on December 1, 2004. The USCG issued unilateral modification seven assessing liquidated damages of $564.00 per day for a total of $50,760.00. As a result of direction by the Government, K-Con submitted a claim for $34,300.00 and requested an extension as a result of the Government's direction and delays resulting from the numerous hurricanes and tropical storms that crisscrossed Florida in 2004.

The issues in the case generally involve what the Government wanted, what the solicitation actually required, what K-Con did, and what the Government directed K-Con to do. More specifically, the issues involve problems with the solicitation, what was actually required by the design/build contract, defective specifications, delays to the contract caused by the Government, the failure of the Government to provide information, the failure of the Government to properly administer the contract, directed changes by the Government, interference by the Government, the Government's failure to mitigate damages, the calculation of the amount set forth in the contract for liquidated damages, the potential damages the Government could have reasonably anticipated for delay, and the additional work and design changes during the contract.

This is the second motion to compel. The first motion resulted in the Government agreeing to provide what K-Con understood to be all of the requested documents. The Government first made electronically stored documents available for inspection and copying in Washington, D.C. on June 6-8, 2007. Pursuant to this Court's Order dated May 16, 2007, K-Con understood the Government

was going to make the remaining original documents available for inspection and copying as the files were kept in the normal course of business. When the documents were made available for inspection and copying in Norfolk on July 16, 2007, not all of the requested documents were produced. This motion was filed after three months of unsuccessful attempts to obtain all of the requested documents.

Considering the Government has the burden of proof on its claim for liquidated damages, and K-Con has a right to fully defend itself against the Government's claims, and that all of the requested documents relate to the contract at issue, it is hard to imagine what documents relating to the contract are not relevant or may not lead to relevant information. In contrast, the Government apparently prefers to withhold documents it considers irrelevant, or too burdensome to produce, in an attempt to "negotiate" which documents it will and will not produce. K-Con simply wants what the rules provide for - disclosure of all documents that are relevant or may lead to the discovery of relevant information so that it can adequately defend itself and present its claim based on all of the facts.

## ARGUMENT

### A. K-Con's First Request for Production:

The Government claims all "relevant" documents have been produced, or are withheld based on privilege. There are two primary issues.

First, the Government has apparently limited its production to documents in the "Coast Guard's official contract file." (Response, p. 3, par. I(iii)). The work was performed in St. Petersburg, Florida; however, it does not appear that documents maintained at the site or by the onsite inspectors have been provided. The Government needs to define what is meant by the "Coast Guard's official contract file" and produce all requested documents regardless of where the files are maintained.

Second, despite the Government's representations, it has not produced all requested documents. Requests No.'s 11, 15, 16, 17, 18, and 19 all request documents relating to the calculation of liquidated damages. No documents relating to the calculation of the liquidated damages amount set forth in the contract have been provided. K-Con is challenging the liquidated damages as a penalty because the amount does not appear to be calculated in accordance with the applicable regulations and is not reasonably related to any damages the Coast Guard could have reasonably incurred as a result of any delay.

In response to Interrogatory No. 9, the Government explained how the liquidated damages amount was calculated. (Appendix, p. A3-A5, Government Response to Interrogatory 9). The response indicated the amount is calculated based on some 18 different amounts, 8 different percentage rates applied to different amounts, and at least one instruction, COMDTINST 7310.1F dated January 20, 1999.

The Government withheld documents between the contracting officer and the Coast Guard's attorney showing how the liquidated damages amount was calculated based on the attorney-client privilege. The documents, however, are not listed on the privilege log. The Government counsel contends that his verbal assertion of privilege, even though the documents are not listed on the privilege log, is sufficient to meet the requirement of the RCFC. (Appendix to Response, A 38, DOJ Email dated Oct. 2, 2007).

K-Con contends that the documents between the contracting officer and the Coast Guard attorney relating to the calculation of the liquidated damages amount cannot be privileged under any theory, and that if a privilege is claimed, the documents must be listed on the privilege log. The documents relating to the calculation of the liquidated damages, including supporting or referenced documents necessary for the calculation, are not privileged even if provided to an attorney for review

because the documents were prepared in the normal course of business. See, *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (Fed. Cl. 2000)(when documents or conversations are created pursuant to business matters, they must be disclosed). Moreover, if the only documents showing how the liquidated damages amount was calculated are those between the contracting officer and the Coast Guard attorney, they must be produced regardless of any privilege because they are apparently the only documents showing how the amount was actually calculated.

The Government has also failed to provide any documents supporting the calculation of the liquidated damages amount. No documents were provided that support any of the different amounts or percentages used in the calculation as set forth in the response to Interrogatory 9. Likewise, while the Government referred to COMDTINST 7310.1F dated January 20, 1999, the document was not provided. To date, absolutely no documents supporting the liquidated damages amount have been produced.

K-Con requests the Court issue an order directing the Government to produce all requested documents, regardless of what files they are in, and produce all documents relating to the calculation of liquidated damages.

**B. <u>K-Con's Second Set of Requests for Production</u>:**

K-Con's Second Set of Requests for Production requested all documents relating to the contract. The Second Set of Requests for Production was made after K-Con inspected documents in Norfolk where the Government did not produce all of the documents requested in Plaintiff's First Request for Production and did not produce the documents identified in the Government's Initial Disclosures. The Government contends the Requests are overly broad, unduly burdensome, oppressive, and seek information that is not relevant nor reasonably calculated to lead to the discovery of relevant information. Considering the Government's prior failure to produce even the

documents it identified in its Initial Disclosures, the request was necessary to ensure all documents were produced. In addition, for the reasons discussed below, all of the requested documents are relevant or may lead to the discovery of relevant information.

As an initial matter, K-Con finds it disingenuous for the Government to object to K-Con's request for all documents relating to the Contract when the Government's Request for Production No. 1, requested: "all documents pertaining to the contract that is the subject matter of this litigation, including, but not limited to, all documents prepared, used by, or reviewed by K-Con in responding to the RFP in this matter." Assuming the Government's request was made in good faith, it is hard to imagine why all of K-Con's documents relating to the contract are relevant or may lead to the discovery of relevant information, but all of the Government's documents are not relevant or may lead to the discovery of relevant information.

The relevance of each category of documents is discussed below in the same order as presented by the Government.

**1. <u>Categories a through e and q</u>:**

The Government contends that the only claims in this case relate to the parties' conduct during performance and the reasons for the delay in completion of the contract, and as such, the requested documents are not relevant because they relate only to information prior to award.

**(a) development of the requirements for the project, and (b) the solicitation**:

The documents are relevant to what work was actually required, what information was required by the Government for the contractor to design and construct the building, what the Government expected in the design versus what was required by the specifications versus what was provided, the schedule and any constraints, liquidated damages, and what damages, if any, would be incurred as a result of any delay. Significantly, while the Government contends that documents

prior to award are not relevant, the only documents that are relevant to the calculation of the liquidated damages amount are documents existing prior to award because the liquidated damages amount must be based on what damages the Government could have reasonably anticipated at the time the contract was executed.

**(c) proposals submitted in response to the solicitation, (d) all pre-award information, and (e) all negotiations with any bidder:**

The documents are relevant to knowledge of problems with specifications, including information necessary for the design, the reasonableness of the schedule, the reasonableness of the Government's estimate, possible defects with the specifications and knowledge of the defects or problems with the specifications by the Government. K-Con is not interested in obtaining information on its competitors, and agrees to a redaction of overhead rates or other potentially proprietary information.

**(q) financial data including funding for the project, limitations on funding, funding requests.**

The documents are relevant because they relate to the Government's initial budget, constraints on the contract and the work included in the contract imposed by the funding limitations, the ability for the Government to authorize changes or not authorize changes, and liquidated damages, or any damages resulting from late completion.

**2.** **<u>Categories j, k, n, o and p</u>**:

The Government contends the requests are overly broad, seek documents that are not relevant, oppressive, and presents an undue burden.

K-Con requested (j) correspondences, (k) memoranda, (n) emails, (o) internal memoranda between government personnel, and (p) correspondences between the Government and any other

entity relating to the project. Significantly, the Government contends that it has produced the documents that are relevant from each of the categories, which is an admission that the documents are relevant or may lead to the discovery of relevant information. However, the Government also admits it has not produced all of the requested documents. It is not the Government's place to determine which of the requested documents are relevant. The Government has asserted claims against K-Con and it must provide all documents so that K-Con can defend itself. The request cannot reasonably be considered oppressive or overly burdensome since it is the Government that has decided to withhold documents.

K-Con requests the Court issue an order directing the Government to produce all documents requested in the Second Set of Requests for Production of Documents.

**C. Government's Privilege Log and Documents Subpoenaed from the Government's Expert, John McGrath.**

The Government has withheld documents 20 - 24 on the Government's Privilege Log based on the attorney-client privilege and the work product privilege. All the documents are to or from the Government's expert, John McGrath. The Government contends that Mr. McGrath is serving a dual role as both a consulting expert and a testifying expert. As such, the Government claims that it is not required to provide documents it provided to Mr. McGrath, or documents that Mr. McGrath provided to the Government counsel, because the documents relate to Mr. McGrath's role as a "consulting expert." The Government has not provided any agreement with Mr. McGrath or an affidavit that supports the position that Mr. McGrath was hired as both a consulting and testifying expert.

First, the documents between the Government and Mr. McGrath are not protected by the attorney-client privilege. The law on the attorney-client privilege is clear. "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom

the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding ...; and (4) the privilege has been (a) claimed and (b) not waived by the client." *AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 446 (2007) citing *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (Fed. Cl. 2000).

The attorney-client privilege does not apply to all communications with an attorney. First and foremost, the privilege does not apply to communications with a third party. *AAB Joint Venture*, 75 Fed. Cl. at 446. (Voluntary disclosure of confidential information to a third party constitutes a waiver of the privilege to those communications). Likewise, it "does not protect either factual information or business advice. '[I]t is clear that when an attorney conveys to his clients facts acquired from other persons or sources, those facts are not privileged.'" *Energy Capital*, 45 Fed. Cl. at 484 citing *Antoine v. Atlas Turner,* Inc., 66 F.3d 105, 110 (6th Cir.1995).

"The assertion of privileges is strictly construed because privileges impede full and free discovery of the truth." *Energy Capital*, 45 Fed. Cl. at 484. "The burden of establishing the attorney-client privilege rests upon the party claiming privilege." *Id.* For each "of the documents for which Defendant seeks to invoke the privilege, Defendant must set forth objective facts to establish that the requirements set forth above for asserting the privilege are met." *AAB Joint Venture*, 75 Fed. Cl. at 447.

In this case, the documents meet none of the requirements for protection under the attorney-client privilege. Mr. McGrath is not a client, but the Government's expert and a third party. Since the documents identified on the Privilege Log were to or from the Government's expert, there is no

privilege and the documents must be produced. See, *AAB Joint Venture*, 75 Fed. Cl. at 446. See also, Rule 26(a)(2)(B) Disclosure of Expert Testimony, RCFC.

Second, the documents are not protected under the Government's theory that they were produced in connection with Mr. McGrath's role as a consultant. The Federal Court of Claims has not specifically addressed the disclosure of documents by an expert working in a dual capacity as both a consulting and testifying expert, but the Court has made it clear that the work-product doctrine does not preclude production of documents given to expert witnesses who are expected to testify at trial, including documents that revealed "an opinion" work product of the attorney. *Energy Capital*, 45 Fed. Cl. at 494. In making its decision, the Court found that "the policy arguments favor the production of all materials given to experts. Complete disclosure promotes the discovery of the true source of the expert's opinions and the detection of any influence by the attorney in forming the opinion of the expert. In addition, the attorneys can minimize how much the other side learns of their opinion work product by monitoring what information is provided to the expert. If the expert does not have the attorney's opinion work product, then neither will the other side's attorney. Lastly, a clear line is easier to administer and a predictable result helps the litigants plan their strategy." *Id.* See also, *Elm Grove Coal Co. v. Director, Office for Workers Compensation Programs*, USDL, 480 F.3d 278, 299-303(2007) (all documents produced to or from testifying experts, including attorney's opinion work and draft reports from experts, must be disclosed).

Federal Courts that have addressed the dual role of an expert have universally "concluded that an expert's proponent still may assert a privilege ..., but only over those materials generated or considered uniquely in the expert's role as consultant." *Securities and Exchange Commission v. Reyes*, 2007 WL 963422 (N.D. Cal.), citing *B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of New York,* 171 F.R.D. 57, 61-62 (S.D.N.Y.1997); *Grace A. Detwiler Trust v. Offenbecher,* 124 F.R.D.

545, 546 (S.D.N.Y.1989); *Beverage Mktg. Corp. v. Ogilvy & Mather Direct Response, Inc.*, 563 F.Supp. 1013, 1015 (S.D.N.Y.1983); *Messier v. Southbury Training Sch.*, No. 3:94-CV-1706, 1998WL422858, at 1-2 (D.Conn. June 29, 1988) (unpublished opinion). See also, *Construction Industry Services Corp. v. Hanover Insurance*, 206 F.R.D. 43, 50-53 (E.D.N.Y. 2001).

In *Reyes,* the court noted that all of the courts have "concluded that the scope of the privilege must be narrowly construed against the expert's proponent, lest the privilege interfere with the goal of the disclosure requirements, which is to allow an adversary 'to expose whatever weaknesses, unreliabilities, or biases might infect the opinions of testifying experts called by [an] adverse party.' *City of Torrance*, 163 F.R.D. at 593. Thus, 'documents having no relation to the expert's role as [a witness] need not be produced but ... any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery.' *B.C.F. Oil Refining, Inc.,* 171 F.R.D. at 62; *see also Offenbacher,* 124 F.R.D. at 546 (noting that documents 'would become discoverable' to the extent that 'the delineation between [the expert's] roles ... become[s] blurred'); *Beverage Marketing,* 563 F.Supp. at 1014 (noting that the privileged and non-privileged status of 'consultant' and 'witness' materials can be maintained only 'if this delineation [is] clearly made')." *Reyes*, 2007 WL 963422.

In this case, the Government contends that the documents "were prepared in response to an instruction from counsel to perform an analysis of the plaintiff's settlement proposal for the purpose of settlement discussions." Response, p. 12. Documents produced by the Government to Mr. McGrath are not privileged, not even documents "that revealed 'opinion' work product of the attorney." *Energy Capital* , 45 Fed. at 494. Therefore, any documents from the Government to Mr. McGrath must be produced, including the "instruction" from counsel.

The documents prepared by Mr. McGrath must also be produced because they deal with this litigation. The settlement proposal submitted by K-Con and reviewed by Mr. McGrath identified eight (8) reasons the assessment of liquidated damages was improper. These are exactly the issues involved in this litigation and any assessment by Mr. McGrath, whether for settlement purposes or otherwise, go directly to Mr. McGrath's opinions concerning the case, his credibility and biases. While the Government contends Mr. McGrath provided views that go beyond the scope of his expertise for which he was retained, they are opinions that deal with this litigation and the strengths and weaknesses of the case, and are clearly relevant to Mr. McGrath's testimony and credibility as an expert. All of the documents must be disclosed because K-Con must be provided an opportunity to cross examine and explore any weaknesses, unreliabilities, or biases that might infect the opinions of Mr. McGrath in his role as a testifying expert. Considering the analysis that the Government admits Mr. McGrath has performed deals with the issues in this litigation, there is no possible way to separate Mr. McGrath's role as a consulting expert from his role as a testifying expert. Since any ambiguities must be found in favor of disclosure, all of the requested documents must be produced.

The Government's refusal to provide the documents has done nothing but thwart K-Con's attempts to obtain complete disclosure of all relevant information and move this case toward a resolution, either through settlement or at trial. As stated by the Court in *Energy Capital*, the policy of complete disclosure "promotes the discovery of the true source of the expert's opinions and the detection of any influence by the attorney in forming the opinion of the expert." 45 Fed. Cl. at 494. Complete disclosure promotes prompt resolution of cases based on all of the facts, both good and bad. The Government cannot simply mark documents "For Settlement Purposes Only," or pick and choose which issues an expert will testify on, in order to hide opinions or avoid disclosure of information provided to or from its expert and adverse to the Government's position.

K-Con requests the Court order Mr. McGrath to comply with the subpoena and produce all documents, including all documents listed on the Government's Privilege Log.

**D. <u>Cathy Broussard's (Contracting Officer) Journal</u>:**

The Government contends that it is not obligated to produce the complete journal maintained by the Contracting Officer, Cathy Broussard, but only portions of the journal that it deems relevant to this matter.

Again, the Government cannot pick and choose which portions of the journal it believes to be relevant or that might lead to the discovery of relevant information. The entire journal must be provided because it is impossible to ensure all relevant portions of the journal have been provided and it is impossible to determine from the portions that have been provided when the notes were taken or in what context they were made. (Appendix, p. A6-A9, Portions of Cathy Broussard's journal that were produced, Bates No. CG-STP-2552- 2556).

Plaintiff's counsel has offered to enter into an appropriate protective order prohibiting disclosure of any information not relating to this contract. Under the circumstances, the Government has no legitimate basis for denying the request, and cannot ensure that all relevant portions of the journal, including portions that may lead to the discovery of relevant information, have been produced.

K-Con requests the Court order the production of the complete journal, and that the parties enter into an appropriate protective order preventing the disclosure of information not relating to the contract.

## <u>CONCLUSION</u>

The Government cannot "pick and choose" which documents it believes are relevant or not relevant, and only produce the documents it wishes to produce. K-Con requests the Court order the

production of all requested documents, or provide the documents to the Court for an *in camera* review, and for attorney's fees and costs associated with this motion.

Respectfully submitted.

**PEDERSEN & SCOTT, P.C.**

S/William A. Scott
William A. Scott
775 St. Andrews Blvd.
Charleston, South Carolina 29407
(843) 556-5656
Fax (843) 556-5635
ATTORNEY FOR PLAINTIFF,
K-CON BUILDING SYSTEMS, INC.

Dated this 29th day of November, 2007.