**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **K-CON BUILDING SYSTEMS, INC.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 05-981 C** |
| **vs.** | ) | **(Judge Sweeney)** |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Rules of the Court of Federal Claims, the defendant, the United States, respectfully submits this motion for a protective order. The United States certifies that is has attempted to confer with plaintiff in an effort to resolve this issue without Court action.

In its order of April 15, 2008, the Court ordered plaintiff to propound "narrowly focused interrogatories" as an aid to determining the availability of documents in the Government's possession, in order to narrow the issues involved in the dispute over plaintiff's requests for production. Plaintiff responded by propounding a set of 34 interrogatories, many of which contain multiple subparts and are unrelated to narrowing the document production issues, as well as 29 additional requests for production. The Government objected to these additional discovery requests on the grounds that they are burdensome, oppressive, seek irrelevant information and, perhaps most importantly, are wholly inconsistent with the spirit of the Court's order of April 15, 2008. However, in an effort to put this discovery dispute to rest, and to avoid further burdening the Court with this issue, the Government agreed to give plaintiff exactly what it has professed to be seeking all along – access to all non-privileged documents related to the St. Petersburg

project. Plaintiff has rebuffed this offer, insisting instead that it is entitled to access to all of the Coast Guard's documents and responses to its burdensome interrogatories. The United States therefore seeks an order from the Court that it need not respond to plaintiff's interrogatories.

**BACKGROUND**

This discovery dispute has a long and undistinguished history, which we will briefly describe in order to put the present controversy in context.[1] Plaintiff's First Set of Interrogatories, Requests for Production of Documents, and Requests to Admit to Defendant (the "First Request") were served on defendant on February 6, 2007. The Government produced documents in response to the First Request in June 2007. Plaintiff then insisted on reviewing original documents, thus requiring the Government to go back to its original documents and conduct another review in order to make the originals available to plaintiff in July 2007. Then, upon examining the original documents, plaintiff's counsel complained that the Government should have produced documents that were not responsive to plaintiff's request for production, but that were, in his view, relevant to the litigation. In an effort to cooperate, the Government agreed to conduct a third review of its documents and to produce all of the non-privileged documents from its official contract file.

Plaintiff then made a discovery request at the opposite extreme, seeking all documents with any conceivable relationship to the subject contract, without making any attempt to tailor its request to matters relevant to this litigation. We provided all of the non-privileged documents responsive to 12 of the 23 categories enumerated in K-Con's request, and objected to the remaining categories. Plaintiff filed a motion to compel production responsive to the remaining

---

1 A slightly more detailed account of these events, along with supporting documentation, may be found in the Government's response to K-Con's second motion to compel, filed November 5, 2007.

categories on September 27, 2007.

The Court held a telephonic hearing regarding plaintiff's motion to compel on April 14, 2008. At the hearing, the Court recognized that many of K-Con's remaining discovery requests were unduly broad, and suggested that the remaining issues could be narrowed or rendered moot if K-Con were to propound a thoughtful set of interrogatories for this purpose. For example, K-Con contended that it needed to review Ms. Broussard's journal in its entirety, including portions that clearly were not relevant to this case, in order to determine the dates on which relevant entries were made. We note that the Government already has produced copies of all of the entries in Ms. Broussard's journal that are related to the St. Petersburg matter. The Court suggested that K-Con might be able to learn the dates on which ambiguously dated journal entries were made, thus obviating the need to review the non-relevant portions of the journal.

To this end, the Court issued an order on April 15, 2008 that, in relevant part, required K-Con to propound "more narrowly focused interrogatories" on defendant. Though the Court did not define the scope of this supplemental discovery, it gave examples of the type of interrogatories it expected K-Con to propound: (i) the location(s) of additional records and (ii) the dates of Ms. Broussard's journal entries. The Court's order did not instruct plaintiff to propound additional requests for production.

K-Con responded by propounding a set of 34 interrogatories, many of which contain multiple subparts and are unrelated to narrowing the document production issues, as well as 29 additional requests for production. Attachment 1. Many of these interrogatories demand that the Government individually identify and provide insignificant details regarding documents that exist in large volumes. For example, Interrogatory 2 demands that the Government identify, among other documents, files "relating to the work performed by K-Con under the contract … ."

This subpart to Interrogatory 2, by itself, would generate a voluminous response. K-Con goes on to demand that the Government identify those documents "by the name," and state "where the file was physically located for the period of July 15, 2003 through January 16, 2007, and where the file is presently located by providing the street address and the office name where the file is/was located." There exists no possible justification for K-Con to request the storage history of each document describing its work.

Similarly, Interrogatory 34 demands the identification of "each and every document in the USCG's possession [other than those already produced] that relate in any way to the work performed by K-Con." (emphasis added) For each such document, K-Con demands that the Government state (1) the date on the document, (2) the subject matter of the document, (3) the author of the document, (4) the recipient[s] of the document and (5) an explanation as to why the Government believes the document is not "relevant to the present Complaint." The inappropriateness of this interrogatory is self-evident.

Interrogatory 2 also provides a good example of the multiple discrete subparts in many of K-Con's interrogatories. There are seven such subparts in Interrogatory 2. Interrogatories 4 and 5 each contain nine subparts. These three numbered interrogatories alone (out of the 34 propounded by K-Con) contain 26 interrogatories, more than the number generally allowed by the RCFC. If broken out into their discrete subparts, they number well over 50 (based on the above information alone), and likely number close to 100.

In addition, many of K-Con's interrogatories are clear perversions of the Court's purpose in granting K-Con the opportunity to serve additional discovery. For example, the Court suggested, as described above, that K-Con submit interrogatories about the dates of Ms. Broussard's journal entries. This suggestion clearly was designed to help the plaintiff determine

the date of the journal entries in its possession (i.e., the copies of journal entries related to the St. Petersburg project previously produced by the Government), where the date of the entry was ambiguous. Rather than submit an interrogatory narrowly focused on determining the date of ambiguously-dated entries, however, K-Con submitted the following interrogatory:

> 9. State with specificity each and every date that Cathy Brousard made any entry in her journal relating to construction of the warehouse at St. Petersburg, including but not limited to entries relating to any meetings, revisions, changes, modifications or amendments to the solicitation and specifications made after July 15, 2003; the calculation of the liquidated damages amount set forth in the Contract; the work performed by K-Con under the Contract; work performed by other contractors relating to construction of the warehouse (including contracts for inspection services, design review, and work necessary to make the building usable); correspondences (including emails, internal memoranda and/or correspondences with other contractors/subcontractors performing work relating to the warehouse at St. Petersburg); the review by the Government (its agents and/or contractors/subcontractors) of any submittals; schedules prepared and or reviewed by the Government (its agents and/or contractors/subcontractors); and/or the evaluation by any Government employee (its agents and/or contractors/subcontractors) of claims, requests for equitable adjustments, requests for extensions, and requests for remission of liquidated damages submitted to the Government by K-Con relating to the Contract. State whether or not the page(s) from the journal has been provided to K-Con through discovery, and state what is on each page sufficient to determine the date of each entry in the journal.

These examples represent but a few of the abuses contained in K-Con's interrogatories.

The United States objected to these additional requests on the grounds that they are overly broad, unduly burdensome, oppressive, and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.[2] Attachment 2. In an

---

2 We note that the Government's objections were served on July 2, 2008. K-Con propounded its interrogatories on May 28, 2008 and, therefore, the original due date for the Government's

effort to bring this discovery dispute to a close, however, the Government agreed to provide K-Con all of the documents it is seeking. Id. Plaintiff rebuffed this offer, and similarly declined even to consider the Government's several other attempts to resolve this issue without Court action. Attachment 3.

## ARGUMENT

K-Con's fourth set of interrogatories unquestionably is overly broad, unduly burdensome, oppressive, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In several communications on this issue, K-Con's counsel has not even attempted to justify the extraordinary breadth and scope of K-Con's additional requests.

Moreover, K-Con's additional discovery requests are wholly inconsistent with the letter and spirit of the Court's order of April 15, 2008, pursuant to which the discovery requests were propounded. The Court ordered plaintiff to propound "more narrowly focused interrogatories" as an aid to plaintiff in formulating reasonable document requests. That is, the Court's order provided the opportunity for K-Con to learn where documents were kept, what the Government did to retrieve them in response to discovery requests and, if possible, obviate the need for the production of certain categories of documents by asking simple, straightforward interrogatories

---

response was June 2. Because Government counsel was engaged in substantial travel during May, the Government and K-Con agreed to a 30-day extension of the time for the Government to file its response. Government counsel indicated his belief at the time that, because the Court had made reference to the RCFC in the relevant portion of its order, and because the RCFC permits the parties to extend the time for discovery responses without leave of Court, that no filing with the Court was necessary. Government counsel did indicate that he intended to file a status report informing the Court of the circumstances, which he intended to do on or about July 2, 2008, the due date for the Government's responses. The Court issued an order on July 2, 2008, however, that preempted the status report that Government counsel intended to file. Clearly, it would have been more helpful to the Court if the Government had filed its status report with the Court prior to July 2, 2008, and Government counsel apologizes to the Court for any confusion he may have caused by not filing a status report sooner.

designed to elicit the same information as the document request. Instead, K-Con has served interrogatories that are broader in scope than its previous discovery requests and that, in many cases, are not designed to aid plaintiff in determining the availability of documents in the Government's possession. The Court's apparent intent in requiring the additional interrogatories was to give K-Con a tool to focus (and hopefully resolve) the discovery disputes between the parties, not to give K-Con a tool to further harass the Government through discovery.

Moreover, the Court's order made no mention of requests for production. Indeed, the submission of requests for production simultaneously with the Court-ordered interrogatories violates the spirit of the Court's order, because the whole purpose of this exercise was for defendant to be able to narrowly tailor its document requests based upon the Government's responses to the interrogatories. The requests for production are, in and of themselves, overly broad, unduly burdensome, oppressive, and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In any event, the Government effectively has satisfied the requests for production by agreeing to make all documents related to the St. Petersburg matter available to K-Con.

In addition, we note that although the Court's order permits K-Con to exceed the number of interrogatories permitted by Rule 33(a) of the Rules of the Court of Federal Claims ("RCFC"), it did not give the plaintiff license to propound an unlimited number of interrogatories. The Court lifted the limit set by RCFC 33(a) in recognition of the fact that, because plaintiff already had served a substantial number of interrogatories in this matter, plaintiff might be hampered in its ability to learn about the existence of documents in the Government's possession if it were strictly limited to 25 interrogatories. Certainly, the Court did not intend to permit plaintiff to engage in limitless discovery in this case and, by not setting a specific number of allowed

interrogatories, left room in its order for defendant to challenge the supplemental interrogatories as burdensome.

The Government has done all it can do to try to amicably resolve this dispute, and to avoid needlessly burdening the Court with yet more argument on these issues. In agreeing to produce all of the non-privileged documents that are related to the St. Petersburg matter, we effectively have agreed to provide all documents responsive to K-Con's document requests and have eliminated the need for K-Con to obtain answers to its additional interrogatories. Indeed, we have agreed to provide exactly what K-Con claims to have sought from the beginning. Moreover, we have demonstrated that this dispute is not about the Government's unwillingness to disclose information to K-Con; rather, it is about the abusive and burdensome means invoked by K-Con to get that information.

We continue to hold the view that production of a substantial portion of these documents is not required under the RCFC and is not responsive to any non-objectionable request for production served by K-Con. The Government's willingness to produce these documents is in no way an admission that it has failed to satisfy its discovery obligations in this case or that the subject documents are relevant to this litigation. We simply have reached the point where the process has become more burdensome than the production.

Finally, we note that we made several attempts to resolve this matter without involving the Court. As the email communications attached hereto as Attachment 3 make clear, K-Con's counsel was unwilling even to engage in these discussions in a serious way.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court enter a protective order relieving the Government from any obligation to respond to Plaintiff's Fourth Set of

Interrogatories and Requests for Production of Documents to Defendant.

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/ Robert E. Chandler
ROBERT E. CHANDLER
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit
8th Floor
1100 L. Street, NW
Washington, D.C. 20530
Tel: (202) 514-4678
Fax: (202) 514-8624

July 9, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 9th day of July 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR PROTECTIVE ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Robert E. Chandler