IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **K-CON BUILDING SYSTEMS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 05-981 C** |
| **vs.** | ) | **(Judge Sweeney)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** | ) | |
| **UNITED STATES COAST GUARD,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S FOURTH SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT**

The Plaintiff requests the above-captioned Defendant to respond to the following Interrogatories and Requests for Production of Documents. Each request shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them. The Defendant shall serve a copy of the answers, and objections if any, within thirty (30) days after service of these Discovery Requests.

## I. DEFINITIONS

A. The terms "you" and "your" refer to Defendant, United States of America, Department of Homeland Security, United States Coast Guard, any other departments of the United States of America, and to its present or former agents, attorneys, representatives and all other persons who have acted or purported to act on their behalf pursuant to contract or otherwise in any of the matters covered by these discovery requests, whether or not it is contended that such entity or person had authority to act on behalf thereof.

B. "Communication" means any oral or written exchange of words, thoughts or ideas with another person(s), whether person to person, in a group, in a meeting, by telephone, letter, telefax, electronic mail, or otherwise, including without limitation any printed, typed, handwritten or other readable document and any tape recording, correspondence, memorandum, report, contract, diary, logbook, minutes, note, study, survey and forecast.

C. "Document" or "documents" shall have their customary broad meanings and shall include, without limitation, all originals, copies and drafts of all written, typewritten, recorded, transcribed, printed, taped, photographic or graphic matter, however produced or reproduced, whether sent or received, or neither, including but not limited to, all books, pamphlets, articles, newspapers, press releases, magazines, booklets, circulars, handbooks, manuals, periodicals, letters, memoranda, files, envelopes, notices, instructions, reports, financial reports, records, studies, transcripts, diaries (formal or informal), audited or unaudited financial statements, working papers, questionnaires, notes, notations, charts, lists, comparisons, telegrams, cables, telex messages, communications (including intracorporate communications, and reports, notes, notations and memoranda of, or relating to, telephone conversations and conferences), minutes, transcriptions, correspondence, agreements, graphs, tabulations, analyses, evaluations, tests, projections, opinions or reports, statements, summaries, desk calendars, appointment books, telephone logs, telephone bills, surveys, indices, tapes, computer inputs or outputs, computer memory, computer discs, electronic mail, microfilm, magnetic tapes, photographs, installation guides and instructional material within your possession, custody or control. Different versions of the same documents, including but not limited to, drafts or documents with handwritten notations or marks not

found in the original or on other copies are different documents.

D. "Person" means any natural person as well as any firm, partnership, proprietorship, association, institution, joint venture, corporation, government entity, administrative agency, professional association and any other organization.

E. "Identify," when used in reference to a natural person, means to provide the person's name, last known home and business addresses, last known home and business telephone numbers, present employer, and job title.

F. "Identify," when used in referenced to a person that is a corporation, partnership, proprietorship, association, business, or other group, means to provide the person's full name, address, telephone number, form of organization, and a description of its business activities.

G. "Identify," when used in reference to a document, means to provide a brief description of the document including its date, author, addressee, known recipients, form (that is, letter, invoice, blueprint, etc.), subject matter, length, and the present custodian of each copy of the document having notations unique to such copy.

H. "Identify," when used in reference to an oral communication, means to state the date of the communication and the place or places where the communication occurred, to identify each person who took part in or heard the communication, to provide a description of the subject matter of the communication, and to identify each document that refers or relates to or evidences the communication.

I. "Date" refers to the exact day, month, and year, if known, or, if not known, the best approximation, including, as appropriate to the situation, relationship to other events.

J. "Defendant" shall refer to the defendant named in this litigation and any present or former officers, directors, agents, attorneys, representatives and all other persons who have acted or purported to act on their behalf pursuant to contract or otherwise in any of the matters covered by these discovery requests, whether, or not it is contended that such entity or person had authority to act on behalf thereof.

K. "Contractor" refers to K-Con Building Systems, Inc.

L. "Contract" refers to Contract No. DTCG47-03-F-3EFK17 (GSA Contract No. GS-07F-0216L) for construction of a prefabricated metal building in St. Petersburg, Florida.

M. "Solicitation" refers to solicitation No. DTCG47-03-F-3EFK17 issued by the USCG.

## II. INSTRUCTIONS

A. In answering these discovery requests, words used in the singular number shall include the plural number and words used in the plural number shall refer to the singular number as well. Gender is to be wholly disregarded, the neuter referring as well as to the male and female an the male and the female referring to each other as well as to the neuter.

B. The words "and" or "or" shall be construed conjunctively or disjunctively, as is necessary to make each discovery request inclusive rather than exclusive; and the singular of any word shall include the plural, and plural shall include the singular, as is necessary to make each discovery request inclusive rather than exclusive.

C. Where identification of each fact relied upon by you with regard to a specified allegation or contention is requested, the response shall state separately which specificity each fact in your knowledge, whether obtained through documents, oral communications (whether or not reduced to writing), personal or professional experience or through any other means, which

you believe supports the truth of such allegation.

D. If you cannot answer any discovery request fully, answer it to the extent possible and state the reason(s) for not answering more fully.

E. If, in answering these discovery requests, you encounter any ambiguity in construing the discovery request, or a definition or instruction relevant to the inquiry contained therein, set forth the matter deemed "ambiguous" and set forth the construction chosen or used in answering the discovery requests.

F. In answering these discovery requests, furnish such information as is available to you, not merely such information as is within your knowledge. This means that you are to furnish information that is known by, available to or in possession of your employees, representatives, servants or agents, including your attorney or any agent or investigator for you or your attorney (unless privileged).

G. If you claim privilege as grounds for objection to any discovery request, identify:

1. The name and address of the speaker or author of the document;
2. The date of the communication or document;
3. The name and address of any person to whom the communication was made or the document was sent or to whom copies were sent or circulated at any time;
4. The form of communication or document (i.e. letter, memorandum, invoice, contract, etc.);
5. The title and length of the document;
6. The names and addresses of any persons currently in possession of the document or copy thereof;

7. A detailed description of the communication or document; and

8. The nature of the privileged claimed.

H. For any document no longer in your custody or control, identify the document, state whether it is missing, lost, destroyed, transferred to others or otherwise disposed of, and identify any person who currently has custody or control of the document or who has knowledge of the contents of the document.

I. These discovery requests shall be deemed continuing in nature so as to require additional answers if further information is obtained between the time the answers are served and the time of trial.

J. For all documents produced in response to these discovery requests, identify the particular numbered discovery request to which they are responsive.

## III. INTERROGATORIES

1. Identify by name, job position/description and address of each and every Government employee that, during the period of July 15, 2003 (the date the solicitation was issued) through January 16, 2007 (the date of Contracting Officer's Decision), kept or maintained documents of any type relating to any revisions, changes, modifications or amendments to the Solicitation and specifications made after July 15, 2003; the calculation of the liquidated damages amount set forth in the Contract; the work performed by K-Con under the Contract; correspondences (including letters, faxes, emails, internal memoranda) relating to the work performed by K-Con under the Contract; the review by the Government (its agents and/or contractors/subcontractors) of any submittal; schedules prepared and/or reviewed by the Government (its agents and/or contractors/subcontractors); and/or the evaluation by any

Government employee (its agents and/or contractors/subcontractors) of claims, requests for equitable adjustments, requests for extensions, and requests for remission of liquidated damages submitted to the Government by K-Con relating to the Contract.

2. Identify by the name (the name and/or description written on the file) of each and every file maintained by the Government (including any Government employees) relating to (1) any revisions, changes, modifications or amendments to the solicitation and specifications made after July 15, 2003; (2) the calculation of the liquidated damages amount set forth in the Contract; (3) the work performed by K-Con under the Contract; (4) correspondences (including letters, faxes, emails, internal memoranda) relating to the work performed by K-Con under the Contract; (5) the review by the Government (its agents and/or contractors/subcontractors) of any submittals; (6) schedules prepared and or reviewed by the Government (its agents and/or contractors/subcontractors); and/or (7) the evaluation by any Government employee (its agents and/or contractors/subcontractors) of claims, requests for equitable adjustments, requests for extensions, and requests for remission of liquidated damages submitted to the Government by K-Con relating to the Contract. For each such file state where the file was physically located for the period of July 15, 2003 through January 16, 2007, and where the file is presently located by providing the street address and the office name where the file was/is located. For each such file state whether or not the original of each such file identified in response to this interrogatory has been made available to K-Con for inspection and copying, and/or whether or not color copies of the complete file have been provided to K-Con.

3. Identify each and every document relating in any way to any revisions, changes, modifications or amendments to the Solicitation and specifications made after July 15, 2003

until the date of the award of the Contract to K-Con. If no such documents exist, please state that no documents exist.

4. Identify each and every document, correspondence or communication with any other bidder or prospective bidder relating to: (1) concerns with the design specifications, (2) concerns with alleged or possible defects with the specifications, (3) time of performance, (4) drawing submittal requirements, (5) the requirements of each option (specifically the mezzanine), (6) ground water and de-watering requirements, (7) site conditions specifically including the concrete paving thickness, (8) design/build requirements and responsibility for sequencing and/or means and methods for construction, and (9) the lay down area that was supposed to be provided in accordance with the specifications. If no such documents exist, please state that no documents exist.

5. Identify each and every document in the possession of the Government, including but not limited to any pre-award information, relating to the Solicitation and/or Contract and: (1) concerns with the design specifications, (2) concerns with alleged or possible defects with the specifications, (3) time of performance, (4) drawing submittal requirements, (5) the requirements of each option (specifically the mezzanine), (6) ground water and de-watering requirements, (7) site conditions specifically including the concrete paving thickness, (8) design/build requirements and responsibility for sequencing and/or means and methods for construction, and (9) the lay down area that was supposed to be provided in accordance with the specifications. If no such documents exist, please state that no documents exist.

6. For the period of July 15, 2003 (the date the solicitation was issued) through January 16, 2007 (the date of Contracting Officer's Decision), identify each and every correspondence

of any type whatsoever (including but not limited to letters, emails, fax, journal entries, meeting minutes, notes, logs, internal memoranda) relating to any revisions, changes, modifications or amendments to the solicitation and specifications; the calculation of the liquidated damages amount set forth in the Contract; the work performed by K-Con under the Contract; the review by the Government (its agents and/or contractors/subcontractors) of any submittals; schedules prepared and/or reviewed by the Government (its agents and/or contractors/subcontractors); and/or the evaluation by any Government employee (its agents and/or contractors/subcontractors) of claims, requests for equitable adjustments, requests for extensions, and requests for remission of liquidated damages submitted to the Government by K-Con relating to the Contract.

7. Identify each and every contract and/or subcontract between the Government and any entity relating in any way to the work performed by K-Con under the Contract, including contracts for inspection services, design review, and engineering services.

8. Identify each and every correspondence between the Government and any other entity (except correspondences with K-Con) relating in any way to the work performed by K-Con under the Contract, including correspondences with contractors and/or subcontractors for inspection services, design review, and engineering services.

9. State with specificity each and every date that Cathy Brousard made any entry in her journal relating to construction of the warehouse at St. Petersburg, including but not limited to entries relating to any meetings, revisions, changes, modifications or amendments to the solicitation and specifications made after July 15, 2003; the calculation of the liquidated damages amount set forth in the Contract; the work performed by K-Con under the Contract;

work performed by other contractors relating to construction of the warehouse (including contracts for inspection services, design review, and work necessary to make the building usable); correspondences (including emails, internal memoranda and/or correspondences with other contractors/subcontractors performing work relating to the warehouse at St. Petersburg); the review by the Government (its agents and/or contractors/subcontractors) of any submittals; schedules prepared and or reviewed by the Government (its agents and/or contractors/subcontractors); and/or the evaluation by any Government employee (its agents and/or contractors/subcontractors) of claims, requests for equitable adjustments, requests for extensions, and requests for remission of liquidated damages submitted to the Government by K-Con relating to the Contract. State whether or not the page(s) from the journal has been provided to K-Con through discovery, and state what is on each page sufficient to determine the date of each entry in the journal.

10. State with specificity whether or not the warehouse at St. Petersburg, as required to be completed by the Contract, could be used by the Government for its intended purpose. If the building could not be used for its intended purpose when K-Con completed the work required by the Contract, state what additional work had to be completed so the building could be used for its intended purpose, and state how and when the Government intended on completing the work necessary so the building could be used for its intended purpose.

11. State whether or not the contracting officer considered the potential impact on pricing, competition, and contract administration before including the liquidated damages provision in the Contract, and, if so, identify each and every document that the contracting officer reviewed, generated, and/or prepared in connection with any such consideration. If no such

document exist, please state no such documents exist.

12. State whether the contracting officer determined that the time of delivery or timely performance of the work required by the Contract was so important that the Government would reasonably suffer damages as result of late delivery or performance, and if so, identify each and every document that the contracting officer reviewed, generated, and/or prepared in connection with any such determination. If no such documents exist, please state no such documents exist.

13. State the date that the liquidated damages daily rate was first calculated or determined in connection with the Solicitation, state whether or not the liquidated damages amount was revised or changed prior to the amount of $564.00/day being stated in the Solicitation, state the date of any changes or revisions to the liquidated damages rate, and identify each and every document that was used, considered, and/or relied upon in calculating the liquidated damages rate.

14. Identify the person or persons, or the regulations, policies and/or procedures, that developed the methodology and/or formula used to calculate the liquidated damages rate stated in the Contract, with the methodology as set forth in the Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9. If no such documents exist, please state that no such documents exist.

15. Identify each and every document, regulation, policy and/or procedure, relating to the methodology and/or formula used to calculate the liquidated damages rate stated in the Contract, with the methodology being as set forth in the Defendant's Responses to Plaintiff's

First Set of Interrogatories, Interrogatory No. 9. If no such documents exist, please state that no such documents exist.

16. For the period of January 1, 2002 through November 2006, state whether any methodology for calculating liquidated damage rates has been used by FDCCLANT **other** than the methodology set forth in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9, and if so, identify each such contract where a different methodology was used, identify any and all documents relating to the calculation of the liquidated damages rate stated in each such contract, and state how the liquidated damages rate was calculated. If no such documents exist, please state that no such documents exist.

17. State whether any solicitation issued after August 2004 for work to be performed at the warehouse at St. Petersburg included a liquidated damages provision, and if so, state with specificity and particularity how the liquidated damages amount stated in that solicitation was determined, breaking the amount down to its most basic and fundamental elements, numbers, calculations and/or formulas so that each element, consideration and/or methodology employed in calculating the liquidated damages figure is clearly shown. In answering this interrogatory, identify any and all regulations, policies, procedures, manuals, rate schedules either adopted or utilized, calculations performed, memoranda, correspondences, and worksheets completed or otherwise utilized. If no such documents exist, please state that no such documents exist.

18. Identify any and all documents showing any relationship between the salaries/wages for the GS-14/CDR, GS-13/LCDR, GS-12/LT, GS-14 (Chief), GS-13/LCDR (Team Leader) GS-

13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12 (COR's), GS-14(Chief), GS-13 (Contracting Officer) and GS-12 (Contracting Specialist) listed in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No 9 and the budget for the Contract. If no such document exist, please state no such documents exist.

19. Identify any and all documents showing any relationship between the pay/salaries/wages for the GS-14/CDR, GS-13/LCDR, GS-12/LT, GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) listed in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 and any increased costs that the Government could have reasonably anticipated as a result of the Contract being awarded. If no such document exist, please state no such documents exist.

20. Identify any and all documents showing any relationship between the pay/salaries/wages for the GS-14/CDR, GS-13/LCDR, GS-12/LT, GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) listed in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 and any increased costs that the Government could have reasonably expected as a result of the Contract being delayed past the Contract completion date. If no such document exist, please state no such documents exist.

21. Identify the individuals, by name, that were assigned to the positions as a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager),

GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 on this Contract.

22. Identify any policies, procedures, guidelines, regulations or other documents relating to the assignment of a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 to work on this Contract. If no such documents exist, please state that no such documents exist.

23. Identify any policies, procedures, guidelines, regulations, studies, historical data, or other documents relating to the time expected to be spent by a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 working on a contract. If no such documents exist, please state that no such documents exist.

24. Identify any and all documents relied upon to determine the percentage of time the GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 were expected to work on this

Contract. If no such documents exist, please state that no such documents exist.

25. State with particularity whether or not the persons identified as a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No 9 would have received the same pay/salary/wages if the Contract was not awarded. If not, explain why they would not have received the same pay/salary/wages.

26. State with particularity whether or not the persons identified as a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer) and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 would have received the same pay/salary/wages whether or not the Contract was delayed past the Contract completion date. If not, explain why they would have received more pay/salary/wages if the Contract was delayed past the contract completion date.

27. Identify any and all documents showing that the Government could have reasonably expected the persons identified as a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 would

have received more pay/salary/wages as a result of delayed completion of the work required by the Contract. If no such documents exist, please state that no such documents exist.

28. State with particularity whether or not the persons identified as a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 were employed by the Government at the time the Contract was awarded, and if not, state when those positions were filled.

29. Identify any and all documents showing the actual time spent working on this Contract by the GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer) and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9. If no such documents exist, please state no such documents exist.

30. Identify any and all documents relating to the percentage of time that the Government could have reasonably expected the GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 to have worked on the Contract during the Contract performance time and during any delay period. If no such documents exist, please state no such documents exist.

31. Identify any and all documents relating to or upon which the $10,000 per month figure for a Construction Inspector (A/E) time was based (as that amount and description is used in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9), state who was actually assigned to this position and state the job qualifications for the position. If no such documents exist, please state no such documents exist.

32. Identify any and all documents relating to or upon which the $200 per month figure for "Other miscellaneous costs (phone, mail, etc.) was based (as that amount and description is used in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9). If no such documents exist, please state no such documents exist.

33. Identify any and all documents maintained by the USCG at the USCG base in St. Petersburg or in Norfolk relating to the weather conditions at the USCG base in St. Petersburg for the period of June 1, 2004 through December 1, 2004, specifically including but not limited to: documents showing the wind direction, speed, rain amounts/day, and documents relating to the effect of the weather on the base, including documents showing when the base was closed, when evacuations of any type were required, when access was limited or restricted, and any other documents relating to the effects of adverse weather at the base.

34. For the period of July 15, 20003 through January 16, 2007, identify each and every document in the USCG's possession that relate in any way to the work performed by K-Con in connection with the Contract **AND that the USCG has not produced** in response to any of Plaintiff's discovery requests based on the USCG's position that the document is not relevant (this does not include documents listed on the Government's Privilege Log), and for each

such document state the date on the document, the subject matter of the document, who authored the document, and the recipient of the document, and state why the document is not relevant to the present Complaint. If no such documents exist, state no such documents exist.

## IV. REQUESTS FOR PRODUCTION

1. Any and all documents identified in the Government's response to Initial Disclosures.

2. Any and all documents referred to and/or relied upon in answering the Plaintiff's First Set of Interrogatories.

3. Any and all documents kept or maintained by any Government employee or in any file in the Government's possession relating to any revisions, changes, modifications or amendments to the Solicitation and specifications made after July 15, 2003; the calculation of the liquidated damages amount set forth in the Contract; the work performed by K-Con under the Contract; correspondences (including letters, faxes, emails, internal memoranda) relating to the work performed by K-Con under the Contract; the review by the Government (its agents and/or contractors/subcontractors) of any submittals; schedules prepared and/or reviewed by the Government (its agents and/or contractors/subcontractors); and/or the evaluation by any Government employee (its agents and/or contractors/subcontractors) of claims, requests for equitable adjustments, requests for extensions, and requests for remission of liquidated damages submitted to the Government by K-Con relating to the Contract.

4. Any and all documents relating in any way to any revisions, changes, modifications or amendments to the Solicitation and specifications made after July 15, 2003 until the date of

the award of the Contract to K-Con. If no such documents exist, please state that no documents exist.

5. Any and all documents, correspondences or communications with any other bidder or prospective bidder relating to: (1) concerns with the design Specifications, (2) concerns with alleged or possible defects with the specifications, (3) time of performance, (4) drawing submittal requirements, (5) the requirements of each option (specifically the mezzanine), (6) ground water and de-watering requirements, (7) site conditions specifically including the concrete paving thickness, (8) design/build requirements and responsibility for sequencing and/or means and methods for construction, and (9) the lay down area that was supposed to be provided in accordance with the specifications. If no such documents exist, please state that no documents exist.

6. Any and all documents in the possession of the Government, including but not limited to any pre-award information, relating to the Solicitation and/or Contract and: (1) concerns with the design specifications, (2) concerns with alleged or possible defects with the specifications, (3) time of performance, (4) drawing submittal requirements, (5) the requirements of each option (specifically the mezzanine), (6) ground water and de-watering requirements, (7) site conditions specifically including the concrete paving thickness, (8) design/build requirements and responsibility for sequencing and/or means and methods for construction, and (9) the lay down area that was supposed to be provided in accordance with the specifications. If no such documents exist, please state that no documents exist.

7. Any and all correspondences of any type whatsoever (including but not limited to letters,

emails, faxes, journal entries, meeting minutes, notes, logs, internal memoranda) relating to any revisions, changes, modifications or amendments to the solicitation and specifications after July 15, 2003; the calculation of the liquidated damages amount set forth in the Contract; the work performed by K-Con under the Contract; the review by the Government (its agents and/or contractors/subcontractors) of any submittals; schedules prepared and or reviewed by the Government (its agents and/or contractors/subcontractors); and/or the evaluation by any Government employee (its agents and/or contractors/subcontractors) of claims, requests for equitable adjustments, requests for extensions, and requests for remission of liquidated damages submitted to the Government by K-Con relating to the Contract.

8. Any and all documents contracts and/or subcontracts between the Government and any entity relating in any way to the work performed by K-Con under the Contract, including contracts for inspection services, design review, and engineering services.

9. Any and all documents and correspondence between the Government and any other entity (except correspondences with K-Con) relating in any way to the work performed by K-Con under the Contract, including correspondences with contractors and/or subcontracts for inspection services, design review, and engineering services.

10. Any and all documents relating to, reviewed, generated, and/or prepared by the contracting officer in connection with any consideration of the potential impact on pricing, competition, and contract administration before including the liquidated damages provision in the Contract. If no such document exist, please state no such documents exist.

11. Any and all documents relating to any determination by the contracting officer that the time

of delivery or timely performance of the work required by the Contract was so important that the Government would reasonably suffer damages as result of late delivery or performance.

12. Any and all documents that were used, considered, and/or relied upon in calculating the liquidated damages rate stated in the Contract.

13. Any and all documents, including regulation, policies and/or procedures, relating to the methodology and/or formula used to calculate the liquidated damages rate stated in the Contract, with the methodology being as set forth in the Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9. If no such documents exist, please state that no such documents exist.

14. For the period of January 1, 2002 through November 2006, any and all documents relating to any formula and/or methodology for calculating liquidated damage rates utilized by FDCCLANT **other** than the methodology set forth in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9.

15. For the period of January 1, 2002 through November 2006, any and all documents relating to the calculation of a liquidated damages rate stated in a contract awarded by FDCCLANT based on a different methodology for calculating liquidated damages rates than the methodology set forth in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9.

16. Any and all documents relating to any liquidated damages rates stated in any contract for work to be performed at the warehouse at St. Petersburg after August 2004, specifically including all documents relating to how the liquidated damages amount stated in any such

contract was determined.

17. Any and all documents showing any relationship between the salaries/wages for the GS-14/CDR, GS-13/LCDR, GS-12/LT, GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) listed in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No 9 and the budget for the Contract. If no such document exist, please state no such documents exist.

18. Any and all documents showing any relationship between the pay/salaries/wages for the GS-14/CDR, GS-13/LCDR, GS-12/LT, GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) listed in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 and any increased costs that the Government could have reasonably anticipated as a result of the Contract being awarded. If no such document exist, please state no such documents exist.

19. Any and all documents showing any relationship between the pay/salaries/wages for the GS-14/CDR, GS-13/LCDR, GS-12/LT, GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) listed in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 and any increased costs that the Government could have reasonably expected as a result of the Contract being delayed past the Contract completion date. If no such documents exist, please state no such

documents exist.

20. Any and all policies, procedures, guidelines, regulations or other documents relating to the assignment of a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 to work on this Contract. If no such documents exist, please state that no such documents exist.

21. Any and all policies, procedures, guidelines, regulations, studies, historical data, or other documents relating to the time the Government could reasonably expect a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer) and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 to spend working on a contract. If no such documents exist, please state that no such documents exist.

22. Any and all documents relied upon to determine the percentage of time the GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 were expected to work on this Contract. If no such documents exist, please state that no such documents exist.

23. Any and all documents showing that the Government could have reasonably expected the

persons identified as a GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 would have received more pay/salary/wages as a result of delayed completion of the work required by the Contract. If no such documents exist, please state that no such documents exist.

24. Any and all documents showing the actual time spent working on this Contract by the GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9. If no such documents exist, please state no such documents exist.

25. Identify any and all documents relating to the percentage of time that the Government could have reasonably expected the GS-14 (Chief), GS-13/LCDR (Team Leader) GS-13,/LCDR (Project Manager), GS-12/LT(Project Manager), GS-12(COR's), GS-14(Chief), GS-13 (Contracting Officer)and GS-12 (Contracting Specialist) as those positions are identified in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9 to have worked on the Contract during the Contract performance time and during any delay period. If no such documents exist, please state no such documents exist.

26. Any and all documents relating to or upon which the $10,000 per month figure for a Construction Inspector (A/E) time was based (as that amount and description is used in

Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9), and provide any and all documents relating to the job qualifications for the position. If no such documents exist, please state no such documents exist.

27. Any and all documents relating to or upon which the $200 per month figure for "Other miscellaneous costs (phone, mail, etc.)" was based (as that amount and description is used in Defendant's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 9). If no such documents exist, please state no such documents exist.

28. Any and all documents maintained by the USCG at the USCG base in St. Petersburg or in Norfolk relating to the weather conditions at the USCG base in St. Petersburg for the period of June 1, 2004 through December 1, 2004, specifically including but not limited to: documents showing the wind direction, speed, rain amounts/day, and documents relating to the effect of the weather on the base, including documents showing when the base was closed, when evacuations of any type were required, when access was limited or restricted, and any other documents relating to the effects of adverse weather at the base.

29. For the period of July 15, 2003 through January 16, 2007, any and all documents in the USCG's possession that related in any way to the work performed by K-Con in connection with the Contract **AND that the USCG has not produced** in response to any of Plaintiff's discovery requests based on the USCG's position that the document is not relevant.

**PEDERSEN & SCOTT, P.C.**

William A. Scott
775 St. Andrews Blvd.
Charleston, South Carolina 29407
(843) 556-5656
ATTORNEYS FOR PLAINTIFF

Dated this 28th day of April, 2008.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **K-CON BUILDING SYSTEMS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 05-981 C** |
| **vs.** | ) | **(Judge Sweeney)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** | ) | |
| **UNITED STATES COAST GUARD,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the **Plaintiff's Fourth Set of Interrogatories and Requests for Production of Documents to Defendant** in the above-captioned case have been placed in an envelope, prepaid, addressed and mailed via U.S. Mail, to:

Robert Chandler, Esquire
Commercial Litigation Branch - Civil Division
U.S. Department of Justice
1100 L. Street NW, 8th Floor
Washington, D.C. 20530

Patricia Bryant
Patricia Bryant
Legal Assistant

Dated this 28th day of April, 2008.

2

**U.S. Department of Justice**

Civil Division

JED:BGS:REChandler
154-05-914

Telephone: (202) 514-4678
Facsimile: (202) 514-8624

*Washington, DC 20530*

July 2, 2008

VIA ELECTRONIC MAIL

Mr. William Scott
Pedersen & Scott
775 St. Charles Blvd.
Charleston, SC 29407
Facsimile No: 843-556-5635

Re: K-Con Building Systems, Inc. v. United States, Fed. Cl. No. 05-981

Dear Mr. Scott:

This letter is in response to plaintiff's fourth set of interrogatories and requests for production (the "discovery requests").

We object to the discovery requests because they are, individually and cumulatively, overly broad, unduly burdensome, oppressive, and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In addition, defendant objects to the requests to the extent they seek documents that are protected by the attorney-client privilege or that constitute attorney work product. Neither defendant nor its counsel will produce any documents subject to the attorney-client privilege or work product protection.

Moreover, the Government objects to the discovery requests on the ground that they are wholly inconsistent with the Court's order of April 15, 2008, pursuant to which the discovery requests were propounded. You will recall that the genesis of the Court's order was our contention, with which the Court agreed, that plaintiff third request for production was unduly broad. The Court ordered plaintiff to propound "more narrowly focused interrogatories" as an aid to plaintiff in formulating reasonable

document requests. That is, the Court intended for the plaintiff to learn where documents were kept, what the Government did to retrieve them in response to discovery requests and, if possible, obviate the need for the production of certain categories of documents by asking simple, straightforward interrogatories designed to elicit the same information as the document request. Instead, plaintiff has served interrogatories that are broader in scope than its previous discovery requests and that, in many cases, are not designed to aid plaintiff in determining the availability of documents in the Government's possession. The Court's intent in requiring the additional interrogatories was to give plaintiff a tool to focus (and hopefully resolve) the discovery disputes between the parties, not to give plaintiff a tool to further harass the Government through discovery.

In addition, we note that although the Court's order permits plaintiff to exceed the number of interrogatories permitted by Rule 33(a) of the Rules of the Court of Federal Claims ("RCFC"), it did not give the plaintiff license to propound an unlimited number of interrogatories. The Court lifted the limit set by RCFC 33(a) in recognition of the fact that, because plaintiff already had served a substantial number of interrogatories in this matter, plaintiff might be hampered in its ability to learn about the existence of documents in the Government's possession if it were stricly limited to 25 interrogatories. In other words, the Court did not want plaintiff to bump up against the interrogatory ceiling as a result of its previous discovery in this case. The Court did not intend to permit plaintiff to engage in limitless discovery in this case and, by not setting a specific number of allowed interrogatories, left room in its order for defendant to challenge the supplemental interrogatories as burdensome.

Clearly the interrogatories propounded by plaintiff are unduly burdensome and contrary to the spirit of the Court's order - plaintiff has served 34 additional interrogatories, most of which are made up of multiple subparts, which must be counted separately for purposes of the RCFC. Counting subparts, the number of plaintiff's supplemental interrogatories comfortably exceeds 100.

We note also that the Court's order made no mention of requests for production. Indeed, the submission of requests for

production simultaneously with the Court-ordered interrogatories violates the spirit of the Court's order, because the whole purpose of this exercise was for defendant to be able to narrowly tailor its document requests based upon the Government's responses to the interrogatories. In any event, the requests for production are, in and of themselves, overly broad, unduly burdensome, oppressive, and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, and in an effort finally to resolve the costly and time consuming discovery dispute that has significantly delayed the litigation of this matter, defendant will produce all non-privileged documents related to the St. Petersburg matter that are within its possession, custody or control, if plaintiff will withdraw its fourth set of interrogatories and requests for production. The aforementioned documents will be made available for inspection and copying on a date mutually agreed by the parties.

We note that we continue to hold the view that production of a substantial portion of these documents is not required under the RCFC and is not responsive to any non-objectionable request for production served by plaintiff.[1] The Government's production of these documents is in no way an admission that it has failed to satisfy its discovery obligations in this case or that the subject documents are relevant to this litigation.

We further note that plaintiff is required to submit to the Court a status report on July 16, 2008. Recall that we agreed, however, that in exchange for plaintiff's agreement to an earlier time extension, we would consent to additional time for plaintiff to file its status report and would submit the necessary filings in order to obtain the extension.

---

[1] Ineed, the production will include the documents that are responsive to plaintiff's <u>objectionable</u> requests for production.

If you agree to the Government's proposal, an extension should not be necessary, assuming you are returning to your office on our about July 10 as planned. Should it appear that plaintiff will need an extension, please let us know, and the necessary arrangements will be made.

Kind regards,

Robert E. Chandler
Trial Attorney

3

**Chandler, Robert (CIV)**

**From:** Bill Scott [bscott@pedersenscott.com]
**Sent:** Wednesday, July 09, 2008 8:07 AM
**To:** Chandler, Robert (CIV)
**Subject:** RE: St. Petersburg - Case 981

Rob:

The only acceptable response is to provide responses to the interrogatories as required by Rule 33. Please provide any comments or revisions to the proposed JSR so we can file it with the court.

Bill

---

**From:** Chandler, Robert (CIV) [mailto:Robert.Chandler@usdoj.gov]
**Sent:** Tuesday, July 08, 2008 4:12 PM
**To:** Bill Scott
**Subject:** RE: St. Petersburg - Case 981

Bill,

If that is of some value to you, I believe we can respond to the Requests for Production in the manner you suggest. We will not, however, respond to the interrogatories. For the reasons stated in my letter of July 2, 2008, those interrogatories are unduly burdensome and oppressive. Perhaps more importantly from your point of view, now that we have agreed to give you all of the documents, the interrogatories are no longer necessary. The Court ordered the additional interrogatories as an aid to narrow your document request. Now that we are giving you everthing, you no longer need such an aid. Please let me know whether this is an acceptable compromise or, if not, please suggest a reasonable alternative compromise.

Regards,

Robert E. Chandler
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street NW
Washington D.C. 20530
(202)514-4678
robert.chandler@usdoj.gov

---

**From:** Bill Scott [mailto:bscott@pedersenscott.com]
**Sent:** Tuesday, July 08, 2008 3:32 PM
**To:** Chandler, Robert (CIV)
**Subject:** RE: St. Petersburg - Case 981

Rob:

To move this case forward you must provide proper responses to the discovery and provide the requested documents. Since you agree to produce all related documents, just say so in the responses to the Request for Production. As for the responses to Interrogatories, provide responses in accordance with Rule 33 RCFC. We will then take the deposition of Cathy Broussard and file a motion for summary judgment that will end government's claim for LD's because the LD amount stated in the contract is clearly a penalty. The people that are included in the calculation would have received that same pay whether this contract was awarded or never awarded, completed on time, delayed one day or a year. The claimed LD's simply are not damages, but costs the USCG would have incurred under any circumstances. The only

issue for trial will be K-Con's claim for additional costs for directed changes to the work. Once that is resolved we will file for all attorneys fees and costs because the government's position is completely unsupportable. I trust that answers your question.

Bill

---

**From:** Chandler, Robert (CIV) [mailto:Robert.Chandler@usdoj.gov]
**Sent:** Tuesday, July 08, 2008 2:30 PM
**To:** Bill Scott
**Subject:** RE: St. Petersburg - Case 981

Bill,

Please understand, we still do not believe that plaintiff is entitled to review all of these documents, and that is why we have had to "go through all of this." I am offering them to you now, however, in an effort to end this once and for all. Moreover, we have reached the point that additional briefings and hearings on these matters pose a greater burden to the Government than providing the documents, notwithstanding the fact that, in our view, the documents should not have to be produced at all. These issues have cost the Court, the Government and you too much time already. We simply want to resolve them.

With that in mind, please let me know what, in your view, has to happen in order to move this case forward.

Regards,

Robert E. Chandler
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street NW
Washington D.C. 20530
(202)514-4678
robert.chandler@usdoj.gov

---

**From:** Bill Scott [mailto:bscott@pedersenscott.com]
**Sent:** Tuesday, July 08, 2008 2:15 PM
**To:** Chandler, Robert (CIV)
**Subject:** RE: St. Petersburg - Case 981

Rob:

I am going to ask the court for sanctions including all attorneys fees for all of the motions and costs associated with discovery to date, and for proper responses to discovery. After all of this, you now say you will give us exactly what we requested from the beginning. Then why did we have to go through all of this to get what we asked for originally? I want to know what documents exist and what documents don't exist, and where the documents are. Quite frankly, after all of this, I do not trust the government to give me anything I do not already have.

Bill

---

**From:** Chandler, Robert (CIV) [mailto:Robert.Chandler@usdoj.gov]
**Sent:** Tuesday, July 08, 2008 2:01 PM
**To:** Bill Scott
**Subject:** RE: St. Petersburg - Case 981

Bill,

Again, I urge you to please explore whether we can negotiate a resolution prior to going back to the Court. Honestly, I have every confidence that the Court will agree with us that your supplemental discovery was unduly burdensome and not consistent with the spirit of the Court's order. We have reached the point, however, where this dispute simply needs to be resolved. To that end, we have agreed to give you exactly what you have asked for from the beginning. I cannot imagine what else you hope to gain by dragging this dispute out even further.

At the very least, I hope you will consider letting us know what relief you intend to seek from the Court. Perhaps that could serve as a starting point for negotiating an amicable arrangement.

Regards,

Robert E. Chandler
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street NW
Washington D.C. 20530
(202)514-4678
robert.chandler@usdoj.gov

---

**From:** Bill Scott [mailto:bscott@pedersenscott.com]
**Sent:** Tuesday, July 08, 2008 12:57 PM
**To:** Chandler, Robert (CIV)
**Subject:** RE: St. Petersburg - Case 981

Rob:

We don't need to reconsider. The solution was for the government to provide proper responses as required by the RCFC. If you had an objection you should have said something way before your letter of July 2, and this only appears to be another delay tactic. I think we need to tell the court what has or has not happened and move forward. Please provide comments to the proposed JSR as requested. If you include the 3 day rule, the responses were due on June 30 (60 days plus 3).

Bill

---

**From:** Chandler, Robert (CIV) [mailto:Robert.Chandler@usdoj.gov]
**Sent:** Tuesday, July 08, 2008 11:33 AM
**To:** Bill Scott
**Subject:** RE: St. Petersburg - Case 981

Bill,

I think we should try to work out a solution to this before going back to the Court. Please note that I did not say that we would produce "relevant" documents, I said "related" documents. This is precisely what you have asked for all along. In effect, I am opening the Coast Guard's files to you, thus obviating the need for these discovery requests. Please reconsider my July 2 letter in this light, and let me know if you think we can work something out.

Please note also that our responses were originally due June 2 (because of the 3-day-for-service rule), so the 30 day extension meant that they were due on July 2.

Regards,

Robert E. Chandler
U.S. Department of Justice
Civil Division

Commercial Litigation Branch
1100 L Street NW
Washington D.C. 20530
(202)514-4678
robert.chandler@usdoj.gov

---

**From:** Bill Scott [mailto:bscott@pedersenscott.com]
**Sent:** Tuesday, July 08, 2008 10:08 AM
**To:** Chandler, Robert (CIV)
**Subject:** St. Petersburg - Case 981

Rob:

I received your letter dated July 2nd. The letter is not a proper response to discovery and your offer to provide "all relevant documents" is unacceptable. Please find attached a proposed Joint Status Report. Please let me know if it is acceptable, or what changes you want. If we cannot agree, then we may both file separate status reports, but I think we should try to submit one report that expressed each party's side.

I look forward to hearing from you.

Bill